# JOSEPH & KIRSCHENBAUM LLP

Attorneys at Law

| | |
|---|---|
| Charles Joseph | 32 Broadway, Suite 601 |
| D. Maimon Kirschenbaum | New York, NY 10004 |
| Denise Schulman | Phone 212) 688-5640 |
| Josef Nussbaum | Fax (212) 688-2548 |
| Lucas Buzzard | www.jk-llp.com |

July 23, 2018

**VIA ECF**

Honorable Alison J. Nathan
Southern District of New York
United States District Court
40 Foley Square
New York, NY 10007

          Re:   *Morales et al v. Pier A Battery Park Associates, LLC et al,*
                 *17 CV 4455 (AJN)*

Dear Judge Nathan,

      We represent Plaintiffs Oliver Morales and Stephanie Neverson ("Plaintiffs") in the above-referenced action. We submit this letter to respectfully request that the Court approve the Settlement Agreement and Release ("Agreement") as a fair and reasonable resolution of a bona fide dispute in accordance with, *inter alia*, the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) and "So Order" the parties' Stipulation of Dismissal. The Agreement is submitted herewith as Exhibit 1, and the Parties' Stipulation of Dismissal is Exhibit A to the Agreement.[1]

      Plaintiffs worked at Defendants Pier A Battery Park Associates, LLC, Harry Poulakakos, and Peter Poulakakos ("Defendants") banquet and bar facilities as food-service employees. Plaintiffs were paid an hourly wage and tips, and Defendants took a tip credit towards its minimum wage obligations to Plaintiffs for all hours they worked. In the Complaint, Plaintiffs

---

[1] As set forth in Plaintiffs' Letter to the Court dated July 2, 2018, the Parties initially could not reach a final agreement, because Defendants refused to provide a signature from Defendant Harry Poulakakos. Plaintiffs' primary concern was that they did not want to issue a release of claims against Harry Poulakakos without having him "on the hook" for the settlement payment. In order to alleviate Plaintiffs' concerns, Defendants agreed to wire the entire settlement sum in an expedited manner into their Counsel's escrow account and to authorize their counsel to wire the entire amount into Plaintiff's Counsel's escrow account within 10 days after the Court approves the Settlement. Given that the money has already been wired into Mr. Kreger's escrow account, Defendants have completely alleviated the concern that led to their original insistence on having Harry Poulakakos sign the agreement, and Plaintiffs agreed to drop him as a signatory to the agreement.

allege wage and hour violations under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Specifically, Plaintiffs claim that Defendants:

(1) Were not entitled to a tip credit under federal law pursuant to 29 U.S.C. § 203(m);

(2) Misappropriated portions of employees' tips, in violation of N.Y. Lab. Law § 196-d, by forcing them to share tips with tip-ineligible employees;

(3) Were not entitled to a tip credit under New York law because they required Plaintiffs who worked banquets to work more than 20% of their day in a "non tipped" occupation in violation of New York Codes Rules and Regulations ("NYCRR"), tit. 12 § 146-2.9;

(4) Were not entitled to a tip credit under New York law because they failed to provide adequate notice as required pursuant to NYCRR § 146-1.3; and

(5) Failed to provide Plaintiffs with the appropriate wage notices required under the New York Wage Theft Prevention Act ("WTPA"). *See* N.Y. Lab. Law § 195(1) and (3).

In November 2017, the Parties agreed to send out notice of pendency of this lawsuit pursuant to 29 § U.S.C. 216(b) and the Court So Ordered this Stipulation conditionally certifying this Action as a collective.

Fact discovery in this action was completed in March 2018. During discovery, Defendants produced and counsel reviewed Plaintiffs' and Opt-in Plaintiffs' full employment files, including personnel files, wage notices, wage statements, pay records, and time records. Plaintiffs took the deposition of Peter Poulakakos and a corporate representative of Pier A pursuant to FRCP § 30(b)(6). Defendants took the deposition of Plaintiff Morales. At the close of discovery, Plaintiffs informed Defendants that they planned to seek to have a Fed. R. Civ. P. Rule 23 class certified and to move for partial summary judgment. Prior to engaging in motion practice, the Parties agreed to attend a mediation which took place with an experienced wage and hour mediator, Ruth Raisfeld, on May 17, 2018. With the assistance of Ms. Raisfeld at the mediation, the Parties were successful in reaching a resolution of this matter.

As set forth in the Agreement, the parties have agreed to settle this case for $425,000. Based on the extensive record developed prior to the mediation, Plaintiffs' counsel was able to determine the precise number of hours that each Plaintiffs and Opt-in Plaintiffs worked and for which Defendants took a tip credit towards its minimum wage obligations.

The Agreement is reasonable and should be approved because it is a fair compromise of disputed claims in light of the risks in this case. Attached hereto as "Exhibit 2", is Plaintiffs' estimate of Defendants' exposure in this case. Counsel estimated Plaintiffs' "best case" wage and hour damages that Defendants could be liable for at approximately $152,000 (approximately $119,000 for tip credit damages and $33,000 for tip misappropriation damages). In addition, as

set forth in the attached spreadsheet, Defendants could be liable to pay Plaintiffs significant penalties and liquidated damages, bringing Plaintiffs' estimated "best case scenario" total recovery to approximately $653,000.  These figures are based on allegations that Defendants contest.

Specifically, Defendants maintain that they were legally entitled to take a tip credit towards their minimum wage obligations to Plaintiff because Plaintiff was, in fact, provided proper notice under the FLSA and New York law. Additionally, it is Defendants' position that Plaintiffs were paid correctly for all of their hours worked and that they understood the manner in which Defendants applied the tip credit, which operates as a complete defense to the NYLL tip credit claim.  Defendants also maintained that there was a distinction between the time that Plaintiffs worked at Defendants' banquet facilities and the time they worked at the bar. Specifically, Defendants' restaurant has both banquet and bar facilities. Many of the opt-in Plaintiffs worked primarily in the bar facilities and rarely worked banquets.  Plaintiffs claimed that on days that they worked banquets, (a) that they worked more than 20% of their day in a "non tipped" occupation in violation of NYCRR § 146-2.9, and (b) that they had to share tips with tip ineligible individuals.  These claims were inapplicable to the time that individuals worked at the bar.  Accordingly, Defendants maintained that Plaintiffs' tip credit claims were less strong for the time they worked at Defendants' bar.  Finally, Defendants did provide some employee with N.Y. Lab. Law § 195(1) notices and contested Plaintiffs' claims that they would be entitled to any WTPA penalties.

Thus, Plaintiffs faced legal and factual risks with respect to their primary claims and the extent of damages resulting therefrom.  Nonetheless, the settlement amounts to more than 300% of Plaintiffs' maximum "hard" damages and, after attorneys' fees and costs, they will still receive more than the total tip credit and tip misappropriation damages they could have been entitled to if successful at trial. *See Chapman-Green v. Icahn House West. LLC,* 2013 U.S. Dist. LEXIS 25671 (S.D.N.Y. Feb. 21, 2013) (approving settlement where plaintiffs received "nearly 90 percent of the wages that they claim they were owed.")  The settlement is particularly favorable in light of the fact that if Defendants prevailed on their positions that (a) Plaintiffs were always working in a "tipped" (as opposed to "non- tipped") occupation, and (b) the notices they gave  Plaintiffs regarding the tip credit were adequate, Plaintiffs' ultimate recovery could be significantly less than what they are receiving under the settlement. *See, e.g. Wenping Wang v. Masago Neo Asian Inc.,* 2016 U.S. Dist. LEXIS 132997, *7 (E.D.N.Y. Sep. 26, 2015) ("Given the wide range of possible recoveries and the sharp divisions in the parties' positions, Plaintiffs' actual recovery is reasonable.")

This settlement was the result of arm's-length negotiations following document productions by both Parties, as well as numerous conversations between counsel related to the documents.  Thus, Plaintiffs were able to fairly evaluate the strengths and weaknesses of her claims and the ultimate settlement. The litigation was aggressively and expeditiously litigated and finally resolved with the assistance of an experienced and reputable wage and hour mediator. In light of the excellent recovery the settlement provides Plaintiff, the Agreement is fair and reasonable.

The Agreement provides for service awards to the two Named Plaintiffs and four of the Opt-in Plaintiffs (collectively, the "Service Award Plaintiffs"). Agreement at ¶ 1(c). "In FLSA collective actions, just as in Rule 23 class actions, service awards are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff. *Diaz v. Scores Holding Co.*, 2011 U.S. Dist. LEXIS 112187, at *9 (S.D.N.Y. July 11, 2011) (citing *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C*, No. 08 Civ. 7670 (BSJ)(JCF), 2010 U.S. Dist. LEXIS 12762 (S.D.N.Y. Feb. 9, 2010), at *1 ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts.")) Here, the Service Award Plaintiffs expended considerable time and effort to assist Plaintiffs' Counsel with the case. They initiated this action and participated in the mediation. They regularly communicated with Counsel about the case, including providing and reviewing documents, and explaining relevant and necessary factual information to Counsel. Thus, the Service Award Plaintiffs' assistance was crucial in the prosecution and proposed resolution of the case. The settlement agreement provides a total of $22,000 in service awards representing approximately 5.1% of the total settlement amount. *See Hyun v. Ippudo USA Holdings*, No. 14-CV-8706 (AJN), 2016 U.S. Dist. LEXIS 39115, at *6 (S.D.N.Y. Mar. 24, 2016) (finding a $30,000 total service award representing approximately 5% of the settlement fund to be "'well within the range of service awards recently approved in the Southern District of New York' in FLSA cases.")(citations omitted)(Nathan J.).

The Parties used the following method to calculate the disbursement of the settlement. Plaintiffs' counsel distinguished between the time Plaintiffs and Opt-in Plaintiffs worked in Defendants' banquet facilities and bar facilities. As outlined above, Plaintiffs had claims for their tip credit damages for both the times they worked at the bar and the times they worked at banquets. However, the time that Plaintiffs worked in the banquet facilities represented the group's strongest claims. Specifically, Plaintiffs who worked banquets claimed (a) that they worked more than 20% of their day in a "non tipped" occupation in violation of NYCRR § 146-2.9, and (b) that they had to share tips with tip ineligible individuals. These claims did not apply to the time that individuals worked at the bar. Nevertheless, all Plaintiffs had claims that (a) Defendants were not entitled to notice due to their failure to provided adequate notice of the tip credit, and (b) that Defendants did not provide them with appropriate WTPA wage notices and statements. Given the differences between banquet and non-banquet claims, Plaintiffs' Counsel assigned 1 point to each hour that Plaintiffs and Opt-in Plaintiffs worked banquets and .4 of a point to non-banquet time these individuals worked. Counsel then aggregated the total of these points and divided each individuals Plaintiff's point total into the group's point total to calculate the amount each individual would be entitled to (after costs, attorneys' fees and service awards).

The Parties structured the settlement so that only the two Named Plaintiffs, who are signatories to the Agreement, will be releasing any claims at the outset. In order for the Opt-in Plaintiffs to release any claims they must submit the release form attached to the Agreement. *See* Agreement at ¶¶ 1(e)-(g); Exs. B and C to the Agreement. Plaintiffs and Opt-in Plaintiffs who submit a release form, will only be releasing claims wage and hour claims, including claims: (1) relating to wages and hours, including those under the Fair Labor Standards Act, New York Labor Law, the New York Hospitality Wage Order, N.Y. Code of Rules and Regulations or common law, and (2) relating to protected activities concerning wages or hours. *See, e.g., Amaro*

*v. Barbuto*, LLC, No. 16-CV-1581 (AJN), 2017 U.S. Dist. LEXIS 15425, at *3 n.1 (S.D.N.Y. Feb. 2, 2017) ("The Court notes that the release, which pertains only to wage and hour claims, is sufficiently narrow to be permissible.") (Nathan J.).  The Agreement does not include any confidentiality or non-disparagement provisions.

Finally, the Agreement provides for reasonable attorneys' fees and costs to Plaintiff's counsel.  Under the Agreement, Plaintiff's counsel seek as fees and costs a total of $146,379.75: $7,039.62 as reimbursement of costs[2] and one-third of the remainder of the settlement – or $139,320.13 – as attorneys' fees.  Given that Plaintiffs are recovering *all* of their damages *after* attorneys' fees, the concerns with respect to attorneys' fees set forth in *Cheeks* are simply not applicable to this case.  In any event, the fees counsel seeks are reasonable as set forth below.

"Courts in this District routinely award one third of a settlement fund as a reasonable fee in FLSA cases." *Villanueva*, No. 16-cv-8782 (AJN), 2018 U.S. Dist. LEXIS 116379, at *8 (S.D.N.Y. July 12, 2018) (Nathan J.); *see also Chung v. Brooke's Homecare LLC*, No. 17-CV-2534 (AJN), 2018 U.S. Dist. LEXIS 80098, at *4 (S.D.N.Y. May 10, 2018) ("Courts routinely award 33.33% of a settlement fund as a reasonable fee in FLSA cases.") (Nathan J.); *Cruz v. Jos Concept LLC*, No. 16-CV-8377 (VSB), 2017 U.S. Dist. LEXIS 139079, at *6-7 (S.D.N.Y. Aug. 26, 2017) ("Nevertheless, an award of $6,600 does not constitute a windfall for Plaintiff's counsel, and appears to be reasonable compensation for the work put into this case. In addition, the requested attorney's fees represent a 2.0 multiplier of the lodestar amount, which is a relatively low multiplier as 'lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District.'")(citing *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918, 2007 WL 2230177, at *17 n.7 (S.D.N.Y. July 27, 2017)(collecting cases).

Moreover, the proposed fee award of one-third of the after-costs settlement amount should also be approved because it was consensual and agreed to by the Plaintiffs.  A request for a one-third fee is also consistent with Plaintiffs' retainer agreement.  *See Mireku v. Red Vision Sys., Inc.*, No. 11 Civ. 9671, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (noting the consensual nature of the fee arrangement); *see also Rangel v. 639 Grand St. Meat & Produce Corp.,* No. 13 Civ. 3234, 2013 U.S. Dist. LEXIS 134207, at *4 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to plaintiff's retainer agreement with counsel, the fee is one-third of the settlement amount, plus costs.  This fee arrangement is routinely approved by courts in this Circuit.").  Finally, the requested fee is particularly reasonable in light of Plaintiffs' recovery *after fees* of practically all of their claimed damages, which were the subject of dispute as set forth above. *See Chapman-Green*, 2013 U.S. Dist. LEXIS 25671, at *7 (approving settlement where plaintiffs received "nearly 90 percent of the wages that they claim they were owed.")

To the extent that the Court deems a "lodestar" crosscheck appropriate, Plaintiff's Counsel's lodestar is $62,162.50, as set forth in the chart below, which summarizes the time from Plaintiffs' Counsels' contemporaneous time records:

---

[2]  A breakdown of Plaintiffs' counsels' costs is attached hereto as Exhibit 3.

| Biller | Hours | Rate | Total |
|---|---|---|---|
| D. Maimon Kirschenbaum[3] | 24.3 | $450 | $10,935 |
| Josef Nussbaum[4] | 138.9 | $350 | 48,615 |
| Paralegals[5] | 20.9 | $125 | 2,612.50 |
| | | **Total:** | **$62,162.50** |

These time records are attached hereto as "Exhibit 4." The fee sought seeks a "lodestar multiplier," of 2.24 which is well within the range accepted by Courts in this Circuit. *See*

---

[3] D. Maimon Kirschenbaum graduated from Fordham University School of Law in 2005 and has worked at Joseph & Kirschenbaum LLP ("JK") since then. As a result of his accomplishments representing food service workers in New York City, he became a member/partner of the firm in May 2007. Mr. Kirschenbaum currently manages the firm, while also maintaining a docket comprised largely of individual and class/collective wage and hours lawsuits. His billable rate has been approved at $450 per hour. *See e.g., Lizondro-Garcia v. Kefi LLC,* No. 12 Civ. 1906, 2015 U.S. Dist. LEXIS 85873, at *20 (S.D.N.Y. July 1, 2015).

[4] I graduated from McGill University's Faculty of Law in 2009 and have been a litigation associate at Joseph & Kirschenbaum LLP ("JK") since June 2011. I was the lead attorney who managed and mediated this case. The majority of my docket involves individual and class/collective wage and hour actions. My billable rate has been approved by Courts in this Circuit at $350. *See, e.g., Fonseca et al v. Dircksen & Talleyrand Inc et al*. 13 CV 5124, Dkt. No. 189; *see also Vasquez v. TGD Grp., Inc*., 14-cv-7862, 2016 U.S. Dist. LEXIS 72773, at *4 (S.D.N.Y. June 3, 2016) ("Lead attorneys in this district typically charge between $300 and $400 per hour for wage-and-hour cases."); *Agudelo v. E & D LLC*,
Case No. 12-cv-960, 2013 U.S. Dist. LEXIS 50486, at *2 (S.D.N.Y. Apr. 4,2013)(awarding lead counsel $350 per hour); *Carrasco v. West Village Ritz Corp*., Case No. 11-cv-7843, 2012 U.S. Dist. LEXIS 95596, at *7 (S.D.N.Y. July 11,2012)("Courts in this [d]istrict have determined in recent cases that the range of appropriate fees for experienced civil rights and employment law litigators is between $250 and $450.").

[5] The paralegals who worked on this case were Debora Duran, Carmenliggia Espinal and Carlora Turnquest.

Ms. Duran was a paralegal at JK from July 2014 until September 2017. She received a B.S. in Criminal Justice from Rutgers University, Newark in October 2011. In January 2014, Ms. Duran completed a 10-month Paralegal Studies program at Fairleigh Dickinson University. Prior to joining JK as a paralegal, she worked as a junior paralegal in the Employment Department of Ginarte, O'Dwyer, Gonzalez, Gallardo & Winograd LLP. Our firm's paralegals' billable rate has been approved at $125 per hour. *See e.g., Lizondro-Garcia*, 2015 U.S. Dist. LEXIS 85873, at *20.

Ms. Espinal has worked for JK as a paralegal since September 2017. She received a B.A. in International Criminal Justice from John Jay College of Criminal Justice in 2011, an M.A. in public administration from John Jay College of Criminal Justice in 2013,and an M.A. in paralegal studies from George Washington University in 2017. Before joining JK, Ms. Espinal worked as a legal assistant at Gordon & Silber, P.C., Koster, Brady and Nagler, LLP, and Outten & Golden, LLP.

Ms. Turnquest was a paralegal at JK in January and February 2017. She returned to the firm in January 2018 and has been employed as a paralegal since that time. Ms. Turnquest has a B.A. from Howard University and a certificate of paralegal studies from Long Island University.

*DeMunecas v. Bold Food, LLC*, No. 09-CV-440(DAB), 2010 U.S. Dist. LEXIS 87644, at * 24 ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar.")

      For the foregoing reasons, Plaintiffs respectfully request that the Court approve the parties' Agreement and So Order the Stipulation of Dismissal. We thank the Court for its attention to this matter.

      Respectfully submitted,

**JOSEPH & KIRSCHENBAUM LLP**

s/*Josef Nussbaum*
Josef Nussbaum
D. Maimon Kirschenbaum
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640


cc: All Counsel of Record (via ECF)